```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
HOLLANDER GLASS TEXAS, INC.,               :

                Plaintiff,                 :    REPORT AND
                                                RECOMMENDATION
        -v.-                               :
                                                17 Civ. 2105 (VSB) (GWG)
ROSEN-PARAMOUNT GLASS CO., INC., et al.,   :

                Defendants.                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Hollander Glass Texas, Inc. ("Hollander") brought this action alleging federal copyright infringement, trademark infringement and unfair competition under the Lanham Act, and trademark infringement under New York statutory and common law against defendants Rosen Paramount Glass & Mirror, LLC ("RPGM") and David Gutman (collectively, the "Gutman defendants"), and Rosen-Paramount Glass Co., Inc. and Stanley Rosen (collectively, the "Rosen defendants"). The Gutman defendants have defaulted and now Hollander seeks a judgment for damages as well as attorneys' fees and costs.[1] For the following reasons, Hollander should be awarded a judgment of $48,173.31.

---

[1] Plaintiff's Application for Damages, Attorneys' Fees and Costs Against Defendants Rosen-Paramount Glass & Mirror, LLC and David Gutman and Memorandum of Law in Support Thereof, filed Oct. 13, 2017 (Docket # 54) ("Pl. Mem."); Declaration of Jeffrey M. Rollings in Support of Plaintiff's Application for Attorneys' Fees and Costs, filed Oct. 13, 2017 (Docket # 55) ("Rollings Decl."); Declaration of Howard F. Mandelbaum, filed Oct. 13, 2017 (Docket # 56) ("Mandelbaum Decl."); Declaration of Jeffrey M. Rollings in Further Support of Plaintiff's Application for Attorneys' Fees and Costs, filed Mar. 1, 2018 (Docket # 69) ("Rollings 2d Decl.").

1

I. BACKGROUND

On March 23, 2017, Hollander filed a complaint against the Rosen defendants. See Complaint, filed Mar. 23, 2017 (Docket # 1). Following an appearance by counsel for the Rosen defendants, Hollander learned that Rosen had sold its business to the Gutman defendants in November 2016. See Affidavit of Stanley Rosen, dated May 30, 2017 (annexed as Ex. 1 to Declaration of Stephanie J. Kaufman, filed May 31, 2017 (Docket # 26)), ¶ 9. Accordingly, Hollander amended its complaint to name the Gutman defendants. See Amended Complaint, filed June 22, 2017 (Docket # 27) ("Am. Compl."). RPGM was served on July 3, 2017, see Affidavit of Service, filed July 20, 2017 (Docket # 33), and David Gutman was served on July 6, 2017, see Affidavit of Service, filed July 20, 2017 (Docket # 34). The amended complaint alleged infringement of a registered trademark and a registered copyright of Hollander's online content. See Am. Compl. ¶¶ 35, 37, 38, 42. The Gutman defendants failed to respond and the Clerk issued a certificate of default on August 3, 2017. See Clerk's Certificate of Default, filed Aug. 3, 2017 (Docket # 40).

Several months later, the Rosen defendants were dismissed from the case in accordance with a settlement they entered into with Hollander. See Stipulation of Dismissal, filed Jan. 10, 2018 (Docket # 67); Letter from Stephanie J. Kaufman, dated Nov. 7, 2017 (Docket # 63) ("Kaufman letter").

On August 24, 2017, District Judge Vernon S. Broderick issued an Order requiring the Gutman defendants to show cause why a default judgment should not be entered against them. Order to Show Cause for Default Judgment Against Defendants Rosen-Paramount Glass & Mirror, LLC, and David Gutman, filed Aug. 24, 2017 (Docket # 41). On September 19, 2017, Judge Broderick ordered that a default judgment be entered against the Gutman defendants in an

amount to be determined after inquest, and decreed that the Gutman defendants be permanently enjoined from further infringement of Hollander's trademark and copyright as alleged in the amended complaint. See Default Judgment Order, filed Sept. 19, 2017 (Docket # 46) ("Default Judgment Order").

Shortly thereafter, Hollander filed the instant motion for a default judgment against the Gutman defendants seeking damages in the amount of $150,000, together with attorneys' fees in the amount of $54,102.25 and costs in the amount of $1663.42, for a total of $205,765.67. Pl. Mem. at 8, 10, 11. On October 20, 2017, Judge Broderick referred the motion to the undersigned for an inquest as to damages. See Amended Order Referring Case to Magistrate Judge, filed Oct. 20, 2017 (Docket # 59). On October 23, 2017, this Court directed the Gutman defendants to respond to Hollander's motion for default judgment by December 15, 2017. Order, filed Oct. 23, 2017 (Docket # 60) ("October 23 Order"). They never filed a response.

After reviewing Hollander's submission, the Court requested further explanation for Hollander's application for attorneys' fees and costs. See Order, filed Feb. 15, 2018 (Docket # 68). Hollander submitted further explanation on March 1, 2018. See Rollings 2d Decl.

Because the default order entered in this case establishes the Gutman defendants' liability, see Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only remaining issue is whether Hollander has supplied adequate support for the damages it seeks, Kuruwa v. Meyers, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), aff'd, 512 F. App'x 45 (2d Cir. 2013); accord GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009). The Second Circuit has held that a damages inquest may be held on the basis of documentary evidence alone "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d

3

38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991). The October 23 Order notified the parties that the Court would conduct the inquest based upon the written submissions of the parties unless a party sought an evidentiary hearing. See October 23 Order ¶ 3. No party has requested an evidentiary hearing. Moreover, because Hollander's submissions provide a basis for an award of damages, no hearing is required.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of the Gutman defendants' default, Hollander's properly pleaded allegations in the complaint, except those related to damages, are accepted as true. See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.") (citation omitted). Thus, the Court's findings of fact are based on the allegations in Hollander's amended complaint regarding liability and the admissible evidence regarding damages contained in its submissions.

### A. Facts Relating to Liability

Hollander is a Texas corporation with its principal place of business in Houston, Texas. Am. Compl. ¶ 10. Defendant RPGM is a New York limited liability corporation with its principal place of business in the Bronx, New York. Id. ¶ 12. Defendant Gutman is an individual residing in New York who serves as president or chief executive officer of RPGM. Id. ¶ 14.

Hollander is the owner and user of a federally registered trademark — "WINTERLAKE, (the 'Trademark')" — "for use in connection with decorative glass not for building purposes, namely, pattern glass." Id. ¶ 22. It is also the owner and operator of a website that displays federally registered copyrighted text, photographs, artwork, and other original content showing examples of Hollander's "Clear Patterned Architectural Glass" products. Id. ¶ 29 (the "Copyright"). Hollander is a "well-known and established manufacturer and distributor of architectural window glass and other speciality glass products and accessories." Id. ¶ 17. It has sold products bearing the Trademark since at least October 2007 and displayed its Copyright since January 2011. Id. ¶¶ 23, 31. The Trademark is "extensive[ly] use[d] and promot[ed]," and with help from "unsolicited media coverage and notoriety [sic]," the Trademark "has become distinctive and prominent." Id. ¶ 26. Consumers associate the Trademark with Hollander. Id. ¶ 27.

The Gutman defendants purchased the domain name "rosenparamountglass.com" in November 2016 from the Rosen defendants, who had owned and operated the website since 2003. Id. ¶¶ 33-34. The website displays "an exact duplicate copy," id. ¶ 38, of Hollander's Copyright "without license or authority from Hollander" and did so both before and after November 2016, id. ¶¶ 35-36. The website also displays, "without Hollander's authority, permission, consent, [or] license," the Trademark. Id. ¶ 42. The Gutman defendants have used the Copyright to "advertise and promote [their] products and related services and accessories" and thereby "generate revenue through the marketing, advertising, and sale of [their] goods and services." Id. ¶¶ 40-41. The Gutman defendants do not "actively or currently sell Hollander glass products," and they do not "maintain[] an inventory of Hollander glass products available for sale." Id. ¶ 43. By using the Trademark, the Gutman defendants "mislead[] consumers into

5

believing that [the Gutman defendants] sell[] Hollander glass products, or that [the Gutman defendants] otherwise are or have been affiliated with or sponsored by Hollander." Id. ¶ 44. The Gutman defendants are "aware of Hollander and Hollander's use of its Trademark in connection with Hollander's goods and services," id. ¶ 47, and "adopted and commenced use of the [Trademark] with the intent to deceive consumers and to cause confusion among purchasers for the purpose of benefitting from the goodwill and public recognition associated with Hollander's Trademark," id. ¶ 49. The defendants "ha[ve] refused to remove either the [Trademark] or [the Copyright] from [their] website." Id. ¶ 58.

### B. Claimed Damages

Hollander requests damages for willful copyright infringement in the amount of $150,000 under 17 U.S.C. § 504(c). Pl. Mem. at 7. In addition, Hollander seeks attorneys' fees in the amount of $54,102.25 and costs in the amount of $1663.42. Pl. Mem. at 10, 11. It does not seek damages for any other claims. Pl. Mem. at 9.

#### 1. Copyright Damages

Hollander seeks statutory damages under 17 U.S.C. § 504(c) of the Copyright Act for infringement of its Copyright after registration.

Section 504(c) of the Copyright Act permits a court to award statutory damages "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." Id. § 504(c)(1). If the court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). Within these statutory limits, the court has broad discretion in determining the appropriate statutory damages award. See Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,

6

807 F.2d 1110, 1116 (2d Cir. 1986); accord Noble v. Crazetees.com, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015) (citations omitted).

Where a defendant has defaulted, a complaint's allegations of willfulness may be taken as true. See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citing All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 621-22 (S.D.N.Y. 2011), and Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)). Additionally, this Court has previously determined that the Gutman defendants willfully infringed Hollander's Copyright. Default Judgment Order ¶ 3. No proof of actual damages or, in fact, any damages, is necessary for the award of statutory damages. All-Star Mktg. Grp., LLC, 775 F. Supp. 2d at 626 (quoting Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001)).

> In calculating the appropriate statutory damages award, courts should consider:
>
> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Bryant v. Media Rights Prods., 603 F.3d 135, 144 (2d Cir. 2010) (citation omitted). Here, Hollander seeks the maximum statutory damages award of $150,000. See Pl. Mem. at 7.

While it is established that defendants willfully infringed Hollander's Copyright, Default Judgment Order ¶ 3, and we recognize that the defendants' default and subsequence silence shows a lack of cooperation in determining damages, several factors weigh against granting high statutory damages. Notably, Hollander has failed to show that use of the Copyright saved the Gutman defendants revenue or earned the Gutman defendants significant profits. In one case defendants cite in support of their requested damages, Hounddog Productions, L.L.C. v. Empire

Film Group, Inc., 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011), the defendant company earned profits in excess of $100,000 from infringement on the plaintiff's copyright. Here, by contrast, the Copyright was present on the defendants' website, under their ownership, for about 4 months before the complaint was filed. See Am. Compl. ¶¶ 54, 57, 58. There is no admissible evidence before the Court as to how long the website remained available after the complaint was filed and the website is currently no longer accessible. In light of the fact that the record allows us to find that the website was operated for only a brief period, that the Gutman defendants did not sell any Hollander products, and that the infringing material constituted only a part of the website, see Am. Compl. ¶¶ 37, 43, we cannot infer that the infringement generated significant profits for the Gutman defendants.

Additionally, Hollander has not shown that it lost revenue as a result of the infringement and courts have often refused to award the statutory maximum without any evidence of lost revenue or information about the defendants' profits. See All-Star Mktg. Grp., LLC, 775 F. Supp. 2d at 624 (citing cases).

Cases where high statutory damages are awarded typically involve defendants who profit significantly despite repeated notices that they are infringing on the plaintiff's copyright. See, e.g., Hounddog Prods., L.L.C., 826 F. Supp. 2d at 631-32; Ermenegildo Zenga Corp. v. 56th Street Menswear, Inc., 2008 WL 4449533, at *1 (S.D.N.Y. Oct. 2, 2008). In cases more analogous to this one, courts have awarded statutory damages of between $15,000 and $30,000. See All-Star Mktg. Grp., LLC, 775 F. Supp. 2d at 627 (awarding $25,000 for use of website images); Burch v. Nyarko, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (awarding $15,000 per photograph published on infringer's website); Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002) (awarding $30,000 for willful infringement of copyrighted

website code). In light of these cases and our own assessment of the need for deterrence, we believe that an award of $25,000 is appropriate.

2. Attorneys' Fees and Costs

Hollander seeks attorneys' fees in the amount of $54,102.25 and costs in the amount of $1663.42. Pl. Mem. at 10, 11. A court has the authority to award attorneys' fees to the prevailing party in a copyright suit under 17 U.S.C. § 505. Section 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Id. § 505. Here, such fees and costs are appropriate to compensate Hollander for the expenses involved in retaining an attorney to litigate this case to default. See, e.g., All-Star Mktg. Grp., LLC, 775 F. Supp. 2d at 628-29 (citing cases); accord Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999) (affirming award of attorneys' fees and costs where there was willful infringement).

As the Second Circuit noted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

(a) Reasonable Hourly Rates

The rate to be set for Hollander's attorneys should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 184. Any such rate must be "in line with those [rates] prevailing in the community for similar services

9

by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). Because the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested, it is incumbent upon the applicant to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." Blum, 465 U.S. at 896 n.11; accord Ortiz v. City of New York, 2016 WL 4532983, at *3 (S.D.N.Y. July 15, 2016). The Court may also "rely on its own familiarity with prevailing rates in the District." Noble, 2015 WL 5697780, at *9 (citing A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005), and Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)).

Here, two partners, one associate, and one paralegal worked on the case. Partner Howard F. Mandelbaum has been practicing law for over 40 years and is "Managing Member" of his firm. Mandelbaum Decl. ¶ 1. He is also a registered patent attorney at the U.S. Patent and Trademark Office. Id. He seeks an hourly rate of $570. Id. Partner Howard Aronson has been practicing intellectual property law for 43 years and is the managing partner at his firm. Rollings Decl. ¶ 7. He charges an hourly rate of $575. See Billing Invoices, filed Oct. 13, 2017 (annexed as Ex. 2 to Rollings Decl. at *10-29), at *29.[2] In light of these attorneys' extensive and specialized experience, and because their hourly rates have not been contested by defendants, we find these hourly rates to be reasonable. See, e.g., Noble, 2015 WL 5697780, at *10 (hourly rate of $475 for an attorney with 35 years' experience); River Light V, L.P. v. Lin & J. Int'l, Inc., 2015 WL 3916271, at *11 (S.D.N.Y. June 25, 2015) (hourly rates of $725, $725, and $720 for

---

[2] Page numbers identified as "*__" refer to the pagination system provided by the Court's ECF system.

partners with evident "skill and expertise" who performed "impressive[ly]"); Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (hourly rate of $675 for three "experienced partners in copyright cases"); Broad. Music, Inc. v. Pamdh Enters., Inc., 2014 WL 2781846, at *6-7 (S.D.N.Y. Jun. 19, 2014) (citing cases awarding $400 to $735 hourly for partners).

Attorney Jeffrey M. Rollings is an associate with 29 years' legal experience and 24 years' experience in intellectual property law matters. See Rollings Decl. ¶ 3-4. He requests an hourly rate of $515. A rate of $515 hourly is higher than that typically approved for associates in this district. See, e.g., Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 201-02 (S.D.N.Y. 2016) ($372 for seventh-year associate); Beastie Boys, 112 F. Supp. 3d at 56 ($461 and $505 for second- and fourth-year associates); River Light V, L.P., 2015 WL 3916271, at *12 ($500 and $450 for seventh- and fifth-year associates); Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354, at *7 (S.D.N.Y. Dec. 3, 2013) ($350 for attorney with 16 years' experience litigating intellectual property law cases). Given Rollings' extensive experience, however, we will approve an hourly rate of $500. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (approving hourly rates of $495 and $530 for partners with 25 years' experience); TigerCandy Arts, Inc. v. Blairson Corp., 2012 WL 760168, at *9 (S.D.N.Y. Feb. 23, 2012) (approving hourly rate of $500 for partner who "has been practicing law for twenty-eight years, specializes in intellectual property law, and has been recognized as a skilled intellectual property attorney by several organizations"); Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 360-61 (S.D.N.Y. 2010) (approving hourly rates between $475 and $540 for attorney with approximately 24 years' experience).

11

Hollander seeks an hourly rate of $240 for paralegal Eric Menist. Rollings Decl. ¶ 8. Menist has seven years experience as a litigation paralegal, now serves as "principal litigation paralegal," and is also attending law school part-time. Id. Because there is no evidence that Menist performed anything other than paralegal tasks, however, we will award an hourly rate of $75. See Cuevas v. Ruby Enters. of N.Y. Inc., 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) ("courts in this Circuit have generally found $75 an hour to be reasonable" for paralegals); accord Santos v. EL Tepeyac Butcher Shop Inc., 2015 WL 9077172, at *2 (S.D.N.Y. Dec. 15, 2015) (approving $75 hourly rate for paralegal); Alvarez v. 215 N. Ave. Corp., 2015 WL 3855285, at *8 (S.D.N.Y. June 19, 2015) ($75 per hour for bilingual paralegals).

(b) Reasonable Number of Hours Expended

Hollander must also establish that the number of hours for which it seeks compensation was reasonable. Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 186. In evaluating whether claimed hours are reasonable, a court considers "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). "Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). In exercising this discretion, the district court should look "to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id. (internal quotation marks omitted) (quoting Di Filippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)). When opting to exclude hours not reasonably expended, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming

fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citation omitted).

Additionally, it is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

In support of their application for attorneys' fees, Hollander's attorneys submitted copies of their invoices showing the date on which services were performed, the hours expended, and a description of the work done, see Billing Detail Report, dated Oct. 9, 2017 (annexed to Mandelbaum Decl.) ("Mandelbaum Bill"), at *3-13; Billing Invoices; Rollings 2d Decl. at *7-29, which they have indicated are based on contemporaneous time entries, Rollings Decl. ¶ 10. This satisfies the contemporaneous time records requirement. See, e.g., Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990).

Hollander's initial submissions did not differentiate between hours expended in litigation with the Gutman defendants and hours expended in litigation with the Rosen defendants. See Mandelbaum Bill at *11-13; Billing Invoices at *10-29. In response to a court order, see Order, filed Feb. 15, 2018 (Docket # 68), Hollander annotated its records to indicate which hours were expended in litigation with the Gutman defendants, the Rosen defendants, or both, see Rollings 2d Decl. at *5.

Hollander contends its attorneys and their support staff spent 32.75 hours on litigation with the Gutman defendants and 56.05 hours on work attributable to both the Rosen defendants

13

and the Gutman defendants, for a total of 88.8 hours. Id. In theory, the 56.05 hours expended in support of claims against both the Rosen and Gutman defendants might be fully compensable to the extent they were necessarily spent in order to pursue the default judgment against the Gutman defendants. However, there are a number of instances where the time entries attributable to both defendants reflect that at least some of the time is not compensable. For example, an entry dated May 31, 2017, reflects that Rollings spent 1.9 hours as follows: "Review opposing counsel objection to OTSC and default; research corporate dissolution issues; conference [Eric Menist], re: dissolution issues; draft/edit amended complaint." Rollings 2d Decl. at *13. While we accept that a substantial share of the time drafting the amended complaint was necessary to make claims against the Gutman defendants, the billing entry includes time obviously attributable exclusively to the Rosen defendants: specifically, the review of the objection of the Rosen attorney to an order to show cause as well as research related to the Rosen defendants' corporate dissolution defense.

Even the 32.75 hours attributable solely to the Gutman defendants cannot be relied upon. For example, an entry dated October 12, 2017, by Jeffrey Rollings states that he spent 3.7 hours on: "Teleconference opposing counsel, re: referral to magistrate order; teleconference Judge's chambers clerk, re: order error; review/analyze conference order, re: initial conference, magistrate referral, edit inquest papers for default; conference [eric menist] same." Rollings 2d Decl. at *26-27. While the notation next to the entry identifies the time as spent exclusively on the Gutman defendants, part of the entry is apparently time spent on the Rosen defendants since it references a conversation with the Rosen defendants' attorney, i.e., "teleconference opposing counsel," and the opposing counsel in fact sent a letter that same day that purported to be on

behalf of the plaintiff as well.  See Letter from Stephanie J. Kaufman, dated Oct. 12, 2017 (Docket # 52).

Additionally, the time entries submitted include many instances of what is commonly referred to as "block billing" — that is, the aggregation of a number of tasks in a single time entry.  See, e.g., Rollings 2d Decl. at *15 (June 7, 2017), *23 (Sept. 22, 2017), *26 (Oct. 13, 2017).  Because block billing interferes with the ability of a court to evaluate the reasonableness of attorney hours, its use may sometimes result in a reduction of fees.  See, e.g., Erickson Prods., Inc., 2016 WL 1337277, at *4 (block billing "makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided") (internal quotation marks omitted) (quoting Trs. of Empire State Carpenters Annuity v. Penco United, LLC, 2015 WL 1650960, at *5 (E.D.N.Y. Apr. 14, 2015)) (40% reduction in fees request); see also Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd., 2011 WL 8955840, at *7 (S.D.N.Y. Apr. 7, 2011) (25% reduction in part because of block billing and noting that the aggregation of related tasks does not solve the problems of block billing); Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing fees by 25% to account for block billing, vagueness in entries, and excessive time spent).  A reduction is particularly appropriate here, given that the use of block billing has interfered not only with an evaluation of the reasonableness of fees but also in determining how to allocate the hours between the two sets of defendants.

Accordingly, we conclude that a reduction in the hours sought is appropriate.  For the 32.75 hours sought that allegedly relate only to the Gutman defendants, we will reduce the hours by 15%, allowing for a total of 27.9 hours.  For the 56.05 hours expended on work attributable to

both the Rosen defendants and the Gutman defendants, we will reduce the hours by 35%, allowing a total of 36.4 hours.

(c) <u>Presumptively Reasonable Fees and Costs</u>

The hourly rate and total hours after the reduction attributable to each attorney are as follows:

|  | Hourly Rate | Hours attributable to Gutman defendants after 15% reduction | Hours attributable to both sets of defendants after 35% reduction | Total fees |
|---|---|---|---|---|
| Aronson | $575 | .4 hours | 1.2 hours | $920 |
| Mandelbaum | $570 | .3 hours | 3.4 hours | $2109 |
| Rollings | $500 | 12.5 hours | 21.5 hours | $17,000 |
| Menist | $75 | 14.7 hours | 10.3 hours | $1875 |
| Totals: |  | 27.9 hours | 36.4 hours | $21,904 |

Accordingly, Hollander should be awarded $21,904 in attorney's fees.

Hollander also seeks reimbursement of costs of $1663.42. Pl. Mem. at 11. Section 505 allows the prevailing party to recover its "full costs" incurred in protection of its copyright. 17 U.S.C. § 505. Hollander is also entitled to costs under the Lanham Act, 15 U.S.C. § 1117(a). Here, Hollander seeks modest amounts for filing fees, travel fees, copying, and service of process, each of which is reflected in the monthly invoices. <u>See</u> Billing Invoices. Hollander has identified the costs attributable to each set of defendants, and seeks $818.84 in costs attributable solely to the Gutman defendants and $450.47 in costs attributable to both sets of defendants, for a total of $1269.31 in costs attributable to the Gutman defendants. We find such costs reasonable. <u>See</u> <u>Zimmerman v. Portfolio Recovery Assocs., LLC</u>, 2013 WL 6508813, at *13

(S.D.N.Y. Dec. 12, 2013) ("where . . . there is no doubt that there were legitimate expenses in th[e] case, the Court [may] exercise its discretion [and award costs]." ) (internal quotation marks and citation omitted) (alteration in original); accord Broad. Music, Inc., 158 F. Supp. 3d at 200 (awarding costs under § 505 after finding "them adequately documented, reasonable, and of the type commonly reimbursed by courts in this District") (citing cases).

In sum, the Court should award $1269.31 in costs to Hollander. Combined with attorneys' fees of $21,904, the plaintiffs should be awarded $23,173.31 in attorneys' fees and costs.

III. CONCLUSION

For the foregoing reasons, plaintiff Hollander Glass Texas, Inc., should be awarded a judgment of $48,173.31 against Rosen Paramount Glass & Mirror, LLC and David Gutman, consisting of $25,000 in statutory damages and $23,173.31 in attorneys' fees and costs.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Vernon S. Broderick at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Broderick. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a),

6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
       March 12, 2018

/s/ Gabriel W. Gorenstein
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Rosen Paramount Glass & Mirror, LLC
2990 Jerome Ave
Bronx, New York 10468

David Gutman
2990 Jerome Ave
Bronx, New York 10468